**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHARON EUL, | ) |
| on behalf of plaintiff and a class, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TRANSWORLD SYSTEMS, INC., successor | ) |
| to NCO FINANCIAL SYSTEMS, INC.; | ) |
| NCO FINANCIAL SYSTEMS, INC.; and | ) |
| BLITT AND GAINES, P.C., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.      Plaintiff Sharon Eul brings this action to secure redress from unlawful credit and

collection practices engaged in by defendants Transworld Systems, Inc. ("Transworld"),

successor to NCO Financial Systems, Inc., NCO Financial Systems, Inc. ("NCO") and Blitt and

Gaines, P.C. ("B&G").   Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15

U.S.C. §1692 et seq. ("FDCPA"), Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") and

Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA") .

### VENUE AND JURISDICTION

2.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28  U.S.C. §1331

and 28 U.S.C. §1337.

3.      Venue and personal jurisdiction in this District are proper because:

    a.      Defendants' collection actions and conduct impacted plaintiff within this

        District;

    b.      Defendants do or transact business within this District.

    c.      Defendant Blitt and Gaines, P.C. is located within this District.

    d.      Defendant NCO has a registered agent and office within this District.

1

   e.  Defendant Transworld has a registered agent and office within this

    District.

**PARTIES**

  4.  Plaintiff Sharon Eul is a resident of Oak Park, Illinois.

  5.  Defendant Transworld Systems, Inc. ("Transworld"), is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, PA 19044.  It is successor to NCO Financial Systems, Inc. ("NCO"), also located at  507 Prudential Road, Horsham, PA 19044.  It does business in Illinois.  Its registered agent and office is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

  6.  Transworld is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

  7.  NCO is a Pennsylvania corporation with offices at  507 Prudential Road, Horsham, PA 19044.  It does business in Illinois.  Its registered agent and office is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

  8.  NCO is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

  9.  Transworld's predecessor NCO represented on its web site that it has an "Attorney Network" for filing suits on debts (http://www.ncogroup.com/Services/ Agency_Attorney_Network.html): "We manage a nationwide network through leading-edge technology and the expertise needed to achieve results."  The debts handled through the network include "student loans".

  10.  In the annual report on Form 10-K filed by NCO's then-parent with the Securities and Exchange Commission  for the fiscal year ended December 31, 2010, at original page 6, NCO represents that it operates "Attorney Network Services" through which NCO "coordinate[s] and implement[s] legal collection solutions undertaken on behalf of our clients through the management of nationwide legal resources specializing in collection litigation. Our collection

2

support staff manages the  attorney relationships and facilitates the transfer of necessary documentation."

11.     Transworld and NCO are debt collectors as defined in the FDCPA.

12.     Defendant Blitt and Gaines, P.C. ("B&G"),  is a law firm organized as an Illinois professional  corporation, with principal offices at 661 Glenn Avenue, Wheeling, IL 60090.

13.     Defendant B&G is engaged in the business of using the mails and telephone to collect consumer debts originally owed to others.

14.     B&G is a debt collector as defined in the FDCPA.

**RELATIONSHIP BETWEEN B&G AND TRANSWORLD/ NCO**

15.     On information and belief, B&G is part of NCO's "Attorney Network," and the alleged debts of plaintiff were handled through the "Attorney Network."

16.     On information and belief, based on affidavits and evidence in *Williams v. NCO Group, Inc.*, 10cv761 (C.D.Cal.), NCO selects counsel, communicates with counsel, and instructs counsel, and the nominal plaintiff in each case does not select, communicate with or instruct counsel.

17.     NCO directs network law firms to not communicate with the nominal plaintiffs:

NCO will interact directly with the Client. In some instances, attorneys may interact directly with the Client only after a request is made through NCO and the Client approves. Only in urgent situations, the firm, and a Client may make contact providing that NCO has also been informed of the situation. If a Client initiates contact with an Attorney Firm directly, the firm is responsible, for  the purposes of inventory control and tracking, to notify NCO of the communication.

ln essence, the Attorney Firm's first point of contact is NCO. All statements, notices, information, etc. will go through NCO. (Attorney Firm SOP v.2.1)

18.     Another portion of the SOP v. 2.1 (4.2.1) states that "All communications regarding accounts will be conducted between the Attorney Firm and NCO only."  On information and belief, subsequent versions of the SOP were consistent.

19.     Network firms are expressly informed that they are "required to follow NCO's Network Attorney Standard Operating Procedures."

20.     Both NCO and network firms are paid on commission.

21.     NCO grades network firms in Attorney Report Cards based on "key performance indices" geared to the speed with which judgments are obtained and collected. The indices include such metrics as "Payer Rates," "Suit Rate," "Service Rates," "Judgment Rates" and "Spin" or "Liquidation Rates."

22.     On information and belief, all acts complained of herein were taken by B&G on behalf of Transworld and its predecessor NCO, as its authorized agents.

23.     The complaints and attachments were form documents, regularly used by B&G.

24.     NCO has previously been sued for the actions of network attorneys, e.g., *Williams v. NCO Group, Inc.*, 10cv761 (C.D.Cal.).

25.     Transworld and its predecessor NCO regularly engaged in and expressly or tacitly authorized deceptive and unfair conduct in connection with the collection of debts, as shown by the following:

   a.   One of the NCO employees that signed affidavits for National Collegiate cases, Chandra Alphabet, signed an agreement with the Georgia Bar to cease and desist from engaging in the unauthorized practice of law in March 2013;

   b.   On July 9, 2013, NCO and related entities entered into a consent judgment in *United States v. Expert Global Solutions, Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., ALW Sourcing, LLC, Transworld Systems Inc.*, 3:13cv2611 (N.D.Tex.), agreeing to injunctive relief and to pay $3.2 million in penalties for improper debt collection practices involving harassment and abuse.

   c.   In February 2012, the Attorneys General of 19 states entered into a settlement with NCO Financial Systems, Inc. to resolve allegations of deceptive and unfair debt collection practices. The states involved were Alaska, Arkansas, Idaho, Illinois, Iowa, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Vermont, and Wisconsin. Pursuant to this settlement, NCO Financial Systems, Inc. agreed to pay $575,000 to the 19 states for consumer protection enforcement efforts and an additional $50,000 for each participating state to refund consumers with valid claims.

   d.   In 2010-2012, NCO Financial Systems, Inc., signed a series of consent orders with the Minnesota Department of Commerce, involving such conduct as hiring unfit persons.

4

e.   In November 2010, NCO Financial Systems, Inc., signed a consent order with the Arizona Department of Financial Institutions involving, among other things, unauthorized practice of law.

f.   In January 2006, NCO Financial Systems, Inc., entered into a settlement with the Pennsylvania Attorney General to resolve numerous claims of using false, deceptive, or misleading representations or means and harassment in connection with the collection of debts.

g.   In 2004, NCO Group Inc., settled Federal Trade Commission charges that it reported inaccurate information about debtors accounts to credit reporting agencies and paid $1.5 million in civil penalties.

## FACTS RELATING TO PLAINTIFF

26.   On January 3, 2007, Plaintiff co-signed a private student loan with JPMorgan Chase Bank, N.A. for the benefit of one Jason Dodd, a student who worked in Plaintiff's office. A copy of the contract is attached as Exhibit A to Appendix A.

27.   The contract was purportedly assigned to National Collegiate Funding, LLC, who then purportedly assigned the contract to National Collegiate Student Loan Trust 2007-1. (Appendix A, Collection Complaint and Affidavit).

28.   NCO Financial Systems, Inc. is then purported "servicer and designated Custodian of Records" for National Collegiate Student Loan Trust 2007-1. (Appendix A)

29.   On information and belief, Jason Dodd defaulted on his student loan debt on or about August 16, 2012, without the knowledge of Plaintiff.

30.   On or about September 2, 2014, defendant Blitt and Gaines, P.C., acting at the direction of defendant NCO, filed a collection lawsuit in the First Municipal District of the Circuit Court of Cook County against plaintiff Sharon Eul and Jason Dodds.

31.   Attached to the lawsuit was an affidavit purported executed by an employee of NCO. The affidavit bears the indicia of a "robosigned" affidavit, in that the name of the affiant is rubber-stamped in a blank.

32.   A copy of the complaint, summons and related documents is attached as Appendix A.

33. Plaintiff was required to retain a lawyer and file an appearance in order to defend the action.

34. Illinois law prohibits treating a delinquent debt as the debt of a cosigner unless prior written notice and a demand to pay is given to the cosigner. Section 2S of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2S, provides:

> Sec.2S. No person may...take any collection action regarding a cosigner of an obligation unless prior thereto, such person has notified the cosigner by first class mail that the primary obligor has become delinquent or defaulted on the loan, that the cosigner is responsible for the payment of the obligation and that the cosigner must, within 15 days from the date such notice was sent, either pay the amount due under the obligation or make arrangements for payment of the obligation...
>
> ***
>
> Any person violating this Section commits an unlawful practice within the meaning of this Act and, in addition, is liable in a civil action for actual damages of up to $250 plus reasonable attorney's fees.

35. At no time did Defendants provide Plaintiff the notice required by Section 2S.

36. It is the policy and practice of Defendants to file, or cause to be filed, a lawsuit naming a cosigner as a defendant, without first providing the notice required by Section 2S.

## COUNT I -- CLASS FAIR DEBT COLLECTION PRACTICES ACT

37. Plaintiff incorporates paragraphs 1-36.

38. This claim is against all defendants.

39. Defendants engaged in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§1692e and 1692f, by filing lawsuits they were specifically prohibited from bringing because of their failure to afford the consumer the proper notice of default and opportunity to repay the debt.

Section 1692e provides:

**§ 1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

6

**(2) The false representation of–**

**(A) the character, amount, or legal status of any debt; . . .**

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

40.    Section 1692f provides:

**§ 1692f.  Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

41.    The alleged debt was sent to Blitt and Gaines, P.C. by NCO.

42.    On information and belief,  Blitt and Gaines, P.C. is part of NCO's "Attorney Network," and the  alleged debt of plaintiff was handled through the "Attorney Network."

43.    On information and belief, based on affidavits and evidence in *Williams v. NCO Group, Inc.*, 10cv761 (C.D.Cal.), NCO selects counsel, communicates with counsel, and instructs counsel, and the nominal plaintiff in each case does not select, communicate with or instruct counsel.

44.    NCO directs network law firms to not communicate with the nominal plaintiffs:

NCO will interact directly with the Client. In some instances, attorneys may interact directly with the Client only after a request is made through NCO and the Client approves. Only in urgent situations, the firm, and a Client may make contact providing that NCO has also been informed of the situation. If a Client initiates contact with an Attorney Firm directly, the firm is responsible, for  the purposes of inventory control and tracking, to notify NCO of the communication.

ln essence, the Attorney Firm's first point of contact is NCO. All statements, notices, information, etc. will go through NCO. (Attorney Firm SOP v.2.1)

45.    Another portion of the SOP v. 2.1 (4.2.1) states that "All communications regarding accounts will be conducted between the Attorney Firm and NCO only."  On information and belief, subsequent versions of the SOP were consistent.

46.    Network firms are expressly informed that they are "required to follow NCO's

7

Network Attorney Standard Operating Procedures."

47.     Both NCO and network firms are paid on commission.

48.     NCO grades network firms in Attorney Report Cards based on "key performance indices" geared to the speed with which judgments are obtained and collected. The indices include such metrics as "Payer Rates," "Suit Rate," "Service Rates," "Judgment Rates" and "Spin" or "Liquidation Rates."

49.     On information and belief, all acts complained of herein were taken by Blitt and Gaines, P.C. on behalf of NCO, as its authorized agent.

50.     NCO has previously been sued for the conduct of state court collection matters by network attorneys, e.g., *Williams v. NCO Group, Inc.*, 10cv761 (C.D.Cal.), and either reviews their actions or chooses not to inform itself of problems in that regard.

51.     NCO's regularly engages in and expressly or tacitly authorizes deceptive and unfair conduct in connection with the collection of debts, as shown by the following:

  a.     On July 9, 2013, NCO and related entities entered into a consent judgment in *United States v. Expert Global Solutions, Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., ALW Sourcing, LLC, Transworld Systems Inc.*, 3:13cv2611 (N.D.Tex.), agreeing to injunctive relief and to pay  $3.2 million in penalties for improper debt collection practices involving harassment and abuse.

  b.     In February 2012, the Attorneys General of 19 states entered into a settlement with NCO Financial Systems, Inc. to resolve allegations of deceptive and unfair debt collection practices.  The states involved were Alaska, Arkansas, Idaho, Illinois, Iowa, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Vermont, and Wisconsin. Pursuant to this settlement, NCO Financial Systems, Inc. agreed to pay $575,000 to

8

the 19 states  for consumer protection enforcement efforts and an additional $50,000 for each participating  state to refund consumers with valid claims.

c. In 2010-2012, NCO Financial Systems, Inc., signed a series of consent orders with the Minnesota Department of Commerce, involving such conduct as hiring unfit persons.

d. In November 2010, NCO Financial Systems, Inc., signed a consent order with the Arizona Department of Financial Institutions involving, among other things, unauthorized practice of law.

e. In January 2006, NCO Financial Systems, Inc., entered into a settlement with the Pennsylvania Attorney General to resolve numerous claims of using false, deceptive, or misleading representations or means and harassment in connection with the collection of debts.

f. In 2004, NCO Group Inc., settled Federal Trade Commission charges that it reported inaccurate information about debtors accounts to credit reporting agencies and paid  $1.5 million in civil penalties.

## CLASS ALLEGATIONS

52. Plaintiff brings this claim on behalf of a class and subclass, pursuant to Fed.R.Civ.P. 23(a) and  23(b)(3).

53. The class consists of (a) all individuals in Illinois, (b) against whom a collection complaint was filed, (c) on a student loan contract (d) in the name of a National Collegiate entity (e) which lawsuit names as a defendant, a person which, based on defendants' records, signed the student loan contract as a cosigner, (f) where defendants cannot produce the notice described by 815 ILCS 505/2S as having been sent to the cosigner prior to the date of the filing of the collection lawsuit, (e) which collection lawsuit was filed  on or after a date one year prior to the filing of this action and on or before a date 20 days after the filing of this action.

9

54. The subclass consists of class members where the debt was sent to Blitt and Gaines, P.C., by NCO.

55. The class and subclass are so numerous that joinder of all members is not practicable. On information and belief, there are more than 35 class members.

56. Many of the lawsuits filed by Blitt and Gaines, P.C., are based on student loans where there are frequently two or more purported obligors (e.g., parent and child). Many of the debts, including many or all of the student loans, are sent to Blitt and Gaines, P.C., by NCO.

57. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether Blitt and Gaines, P.C., has a practice of suing cosigners without providing proper notice of the default prior to filing suit.

    b. Whether such practice violates the ICFA.

58. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

59. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and ICFA and FDCPA litigation.

60. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights;

    c. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class members and against defendants for:

    i. Statutory damages ($1,000 per plaintiff per alleged debt and the

lesser of $500,000 or 1% of each defendant's net worth for the class);

ii.     Attorney's fees, litigation expenses and costs of suit;

iii.    Such other and further relief as the Court deems proper.

### COUNT II -- ILLINOIS CONSUMER FRAUD ACT

61.    Plaintiffs incorporate paragraphs 1-36.

62.    This claim is brought against Defendants NCO and Transworld.

63.    Defendants engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2 and 2S, when they filed a lawsuit against Plaintiff to collect a student loan she co-signed for someone else.

64.    Defendants engaged in such conduct in the course of trade and commerce.

65.    Defendants engaged in such conduct for the purpose of depriving plaintiff and the class members of their money.

66.    Plaintiff suffered damages as a result of having to retain an attorney and file an appearance in order to defend the action.

67.    815 ILCS 505/2S provides for a recovery of up to $250 as an actual damage which eliminates the need to establish actual damages. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006).

### CLASS ALLEGATIONS

68.    Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

69.    The class consists of (a) all individuals in Illinois, (b) against whom NCO or Transworld filed, or caused to be filed, a collection complaint, (c) which lawsuit names as a defendant, a person which, based on defendants' records, signed the student loan contract as a cosigner, (d) where defendants cannot produce the notice described by 815 ILCS 505/2S as having been sent to the cosigner prior to the date of the filing of the collection lawsuit, (e) which

collection lawsuit was filed on or after a date three years prior to the filing of this action and on or before a date 20 days after the filing of this action.

70.     The class is so numerous that joinder of all members is not practicable. On information and belief, there are more than 40 class members.

71.     Many of the lawsuits filed by Blitt and Gaines, P.C., are based on student where there are frequently two or more purported obligors (e.g., parent and child). Many of the debts, including many or all of the student loans, are sent to Blitt and Gaines, P.C., by NCO.

72.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

        a.     Whether NCO and Transworld, has a practice of suing cosigners without providing proper notice of the default prior to filing suit.

        b.     Whether such practice violates the ICFA.

73.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

74.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and ICFA and FDCPA litigation.

75.     A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.     Individual actions are not economically feasible.

        b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of herself and the classes and against the Defendants for:

        (1)     Appropriate actual and punitive damages;

        (2)     Attorney's fees, litigation expenses and costs of suit;

        (3)     An injunction restraining further violations of Section 2S;

(4)     Such other or further relief as the Court deems proper.

## COUNT III – ILLINOIS COLLECTION AGENCY ACT

76.     Plaintiffs incorporate paragraphs 1-36.

77.     This claim is against NCO and Transworld.

78.     Defendant is a "collection agency" as defined in the ICAA.

79.     Defendant violated the following provisions of 225 ILCS 425/9:

. . . (20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. . . .

. . . (26) Misrepresenting the amount of the claim or debt alleged to be owed.

80.     A private right of action exists for violation of the ICAA. *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979); *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 940 (N.D. Ill. 2012).

## CLASS ALLEGATIONS

81.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

82.     The class consists of (a) all individuals in Illinois, (b) against whom NCO or Transworld filed, or caused to be filed, a collection complaint, (c) which lawsuit names as a defendant, a person which, based on defendants' records, signed the student loan contract as a cosigner, (d) where defendants cannot produce the notice described by 815 ILCS 505/2S as having been sent to the cosigner prior to the date of the filing of the collection lawsuit, (e) which collection lawsuit was filed on or after a date five years prior to the filing of this action and on or before a date 20 days after the filing of this action.

83.     The class is so numerous that joinder of all members is not practicable. On information and belief, there are more than 40 class members.

84.     Many of the lawsuits filed by Blitt and Gaines, P.C., are based on student where there are frequently two or more purported obligors (e.g., parent and child). Many of the debts, including many or all of the student loans, are sent to Blitt and Gaines, P.C., by NCO.

85.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

        a.      Whether NCO and Transworld, has a practice of suing cosigners without providing proper notice of the default prior to filing suit.

        b.      Whether such practice violates the ICFA.

86.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

87.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and ICFA and FDCPA litigation.

88.     A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.      Individual actions are not economically feasible.

        b.      Members of the class are likely to be unaware of their rights;

        c.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of herself and the classes and against the Defendants for:

        (1)      Appropriate actual and punitive damages;

        (2)     Attorney's fees, litigation expenses and costs of suit;

        (3)     An injunction restraining further violations of Section 2S;

        (4)     Such other or further relief as the Court deems proper.


                        s/Daniel A. Edelman
                        Daniel A. Edelman

14

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
    & GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

15

## <u>VERIFICATION</u>

The undersigned declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the facts stated in the foregoing complaint are true to the best of her knowledge and belief.

_Sharon Eul_
Sharon Eul

9

**<u>NOTICE OF LIEN AND ASSIGNMENT</u>**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


<u>s/Daniel A. Edelman</u>
Daniel A. Edelman

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings,  data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with any plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiffs demand that defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendants.

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman