**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHARON EUL, et al., on behalf of themselves and a putative class, | ) ) ) |
| Plaintiffs, | ) Honorable Judge Ruben Castillo ) |
| v. | ) Case No.: 1:15-cv-07755 ) |
| TRANSWORLD SYSTEMS INC., et al., | ) Magistrate Judge Maria Valdez ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUR-REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

**INTRODUCTION**

Plaintiffs' contend that the defendants raised new arguments in their reply brief requiring a sur-reply to address those new arguments; however, as evidenced by plaintiffs' sur-reply, the arguments were not raised for the first time in the reply brief. Plaintiffs' brief is simply redundant and a typical 'second bite at the apple' tactic.

In regard to the written contracts referred to in plaintiffs' Consolidated Complaint, plaintiffs do not get to pick and choose which parts of the documents they consider to be valid for each individual claim (or to ignore the note disclosure statements entirely). The written contracts are fully integrated and, for that reason, this Court should not look beyond the documents.

Next, in regard to the state court § 2S co-signor notice, plaintiffs are asking for remedies that do not exist under state or federal law. This Court should refrain from creating remedies where the legislature, or existing case law, has not provided such a right.

Additionally, in regard to *Spokeo*, while failure to plead Article III standing was raised in the defendants' memorandum in support of their motion to dismiss the Consolidated Complaint (*see* pg. 29), to the extent that it was raised as to all plaintiffs in the reply brief, failure to plead subject matter jurisdiction may be raised at any time. *See* Fed. R. Civ. P. 12(h)(3). Perhaps more importantly, *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016), the case upon which the argument hinges, was not decided until after the motion to dismiss was filed, so reference to it would not have been possible in the opening brief. If some, or all, of these plaintiffs do not have Article III standing, they should not be able to proceed with their complaint, and the defendants should not be forced to litigate claims where jurisdiction is lacking. Pursuant to *Spokeo*, each individual plaintiff must plead an injury that is both concrete *and* particularized. Plaintiffs' alleged hypothetical injuries, to the extent they have any, are not sufficient. Each plaintiff has failed to plead a concrete injury as set forth in greater detail below.

Finally, on September 8, 2016, plaintiffs' filed a motion to submit additional authority, including, *Consumer Financial Protection Bureau v. CashCall, Inc., et al.*, 15cv7522-JFW-RAO (C.D. Cal. Aug. 31, 2016) and *Marquez, et al. v. Weinstein, Pinson & Riley, P.S. et al.*, No. 15-3273, 2016 WL 4651403 (Sept. 7, 2016). To the extent that this Court grants plaintiffs' motion to submit additional authority, and relies upon the cases cited, both cases are easily distinguishable from the factual, and legal issues, before this Court, as addressed in greater detail below.

## ANALYSIS

**1. The Exhibits Control When Resolving Conflicts Between the Exhibits and the Allegations of the Complaint.**

Plaintiffs appear to imply that the national banks, and unnamed third parties, directly, have engaged in wide-spread behavior with the intent to defraud the plaintiffs. Not only is this

argument significantly inflammatory, it also entirely ignores the fully integrated written contracts attached to the state court collection complaints that trump plaintiffs' unsubstantiated and entirely conclusory claims.

When an exhibit contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss. *Hupfauer v. Citibank, N.A.*, 2016 WL 4506798, *3 (N.D. Ill. 2016) (Castillo, J.) *citing Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The Seventh Circuit has specifically stated that this rule is "aimed at cases interpreting, for example, a contract" and its purpose "is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *118 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) *quoting Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) and *citing Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

The case upon which plaintiffs rely, *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998), does not support their contention that this Court should ignore the written contract and instead accept plaintiffs' allegations as true. In fact, it supports defendants' argument. In *N. Indiana Gun & Outdoor Shows*, the 7th Circuit reviewed a factual pattern where the district court, in granting a Rule 12(c) motion for judgment on the pleadings, resolved a conflict between the allegations made in a complaint and unilateral statements made in letters that the plaintiff attached as exhibits to the complaint. In resolving the conflict between the allegations of the complaint, and the exhibits, the 7th Circuit indicated that "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Id.* at 454 (citing *ALA, Inc. v. CCAIR, Inc*., 29 F.3d 855, 859 n. 8 (3d Cir. 1994) (concluding that when documents attached to a complaint contradict the allegations of the complaint, the document controls in a Rule 12(b)(6) motion to dismiss)).

3

The court found that the district court's reliance upon letters attached to a complaint to represent the truth of the defendants' intent when they had been attached for reasons unrelated to intent was improper. *Id.* at 457. However, the court noted that:

> When the document itself forms the basis for the allegation, the document must be examined as a whole. *See Foshee v. Daoust Const. Co.*, 185 F.2d 23, 25 (7th Cir.1950) ("The meaning to be ascribed to [a] phrase must be determined from the contract as a whole" rather than in isolation.). When the exhibit, however, is not the subject of the claim, Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact. ***A blanket adoption rule makes sense in the context of an attached contract or loan agreement because the contract represents an agreement between two or more parties to which the law binds them***. We are not inclined to apply such a rule in the case of letters written by the opposition for what could be self-serving purposes. [Emphasis added]. *Id.* at 455.

Here, the written contracts are the type of document entitled to the above quote referencing a 'blanket adoption rule'. The contracts were voluntarily entered into by plaintiffs, as they acknowledge in their sur-reply. The contracts were attached by plaintiffs to the Consolidated Complaint and plaintiffs directly rely upon the provisions of the contracts to assert their arguments. Therefore, this Court need not accept plaintiffs' unsupported allegations that are contradicted by the contracts which clearly provide that a national bank funded the loans.

To the extent that plaintiffs attempt to rely upon *Ubaldi* in an attempt to save their claims alleging usurious interest, which the defendants have previously distinguished in their reply brief, plaintiffs never alleged in their Consolidated Complaint that the national banks did *not* fund or originate the loans. *See* Consolidated Complaint at ¶¶ 81-88. Rather, plaintiffs made overly vague allegations focused around the amount of time the loans were held by the "nominal originating bank" before they were assigned to another entity. *Id.* ¶ 88. Yet, that is an entirely different claim than what plaintiffs are attempting to argue they are now asserting via their sur-reply. Plaintiffs now apparently contend that they dispute the national banks ever funded or

4

originated the loans in the first place. However, those allegations are absent from their pleadings, are wholly unsupported based upon the written contracts attached to the state court collection complaints, and are an improper attempt to amend a pleading via a sur-reply brief. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Notably, plaintiffs actually urge this Court to "infer", Doc#81; PageID#1646, that they alleged something in their Consolidated Complaint that is *not* actually in it. This Court should not "infer" anything into the Consolidated Complaint. Rather, it should dismiss the Consolidated Complaint based on this obvious admission - the counter-inference of which is that plaintiffs have just conceded they should have alleged something but failed to do so. Federal Rule of Civil Procedure 11 would be rendered meaningless if plaintiffs, in general, were allowed to incorporate facts by *inference* into pleadings after the fact, without ever having to actually put the allegation in the pleading in the first place.

In any event, there is no dispute that the national banks disbursed the loans and held the loans before selling them. This Court need not infer contradictory information where the documents state otherwise. Moreover, plaintiffs make no attempt to distinguish the 7th Circuit's ruling in *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285 (7th Cir. 2005). None of the loans were usurious upon origination, and they did not somehow become usurious upon assignment.

**2. Plaintiffs Attempt to Read Out the Note Disclosure Statements from their Loan Documents Defies Contract Law and a Plain Reading of the Written Contracts.**

Plaintiffs take an unreasonable position that this Court should entirely ignore the note disclosure statements for the purposes of its statute of limitations analysis somehow implying that a written agreement cannot contemplate multiple documents. Here, *the language the plaintiffs cite* in their Consolidated Complaint actually states, explicitly, that the loan disclosure

5

statements are part of the contract. *See* Consolidated Complaint ¶ 107. It is unclear in what way plaintiffs consider this to be improper to incorporate additional documents by reference, or to read related documents together. A document "should be read as a whole so that all its parts will be given effect, and related documents must be read together." *Murphy v. Keystone Steel & Wire Co., a Div. of Keystone Consol. Indus.,* 61 F.3d 560, 565 (7th Cir. 1995) (citing *Preze v. Board of Trustees,* 5 F.3d 272, 274 (7th Cir. 1993); *Lippo v. Mobil Oil Corp.,* 776 F.2d 706, 713 n. 13 (7th Cir. 1985)); *see also In re Ocwen Fed. Bank FSB Mortgage Servicing Litig.*, No. 04 C 2714, 2005 WL 1027118, at *5 (N.D. Ill. Apr. 25, 2005) (reading together mortgage and note language).

As an example, a promissory note incorporates a mortgage by reference, and purchase and sale agreements often contemplate multiple documents that are not always executed by the parties. If one document is referenced and contemplated by the other they are read together for limitations purposes. Again, this transaction is not equivalent to a credit card contract where a new contract is created upon each use – the credit agreements contemplate the note disclosure statements and they are read together as one. Plaintiffs attempt to invalidate documents that they entered into, acknowledge executing, received funds, yet now try to escape the loans they received by asking this Court to create new law that has never before existed in Illinois. There is no law to support this, and plaintiffs cite to no cases to support their unfounded position. Indeed, "[t]he rights of parties to a contract are limited by the terms expressed in the contract; a court will not rewrite a contract to suit one of the parties, but will enforce the terms as written." *Majchrowski v. Norwest Mortgage, Inc.,* 6 F. Supp. 2d 946, 964 (N.D. Ill. 1998) (quoting *Wright v. Chicago Title Ins. Co.,* 196 Ill.App.3d 920, 925 (1st Dist. 1990)).

The documents attached to the state court complaints, with terms and conditions voluntarily executed by the plaintiffs and assented to, are sufficient, in and of themselves, to provide the essential terms to fall within the limitations period of 735 ILCS 5/13-206. How this Court could read out the note disclosure statements defies logic, is entirely discredited by the terms plaintiffs cite to indicating that the note disclosure statements are incorporated by reference, and would require this Court to ignore long-standing contract law.

If this Court were to hold that the statute of limitations for a written student loan contract is 5-years, it will have far reaching implications that the Illinois legislature never contemplated. If plaintiffs, or their counsel, wish to change the law, the proper vehicle is through the legislature, not urging a federal court to create a remedy that has never existed before. Simply because some state legislatures have provided for shorter limitations periods on written contracts, does not mean that a federal court should decide that the Illinois limitations period is too long, and there are many other states that have limitations periods as long as Illinois, or in some cases even longer. *See* Indiana Ind. Code Ann. § 34-11-2-1 *et seq*. (10 years); Iowa Code Ann. § 614.1 *et seq*. (10 years); Kentucky Ky. Rev. Stat. Ann. § 413.080 *et seq*. (10 years); Louisiana La. civil code § 3492 *et seq*. (10 years); Rhode Island R. I. Gen. Laws § 9-1-12 *et seq*. (10 years); West Virginia W. Va. Code § 55-2-1 *et seq*. (10 years); Wyoming Wyo. Stat. § 1-3-102 *et seq*. (10 years). The statute of limitations on written contracts in Illinois is ten years, and that limitations period clearly applies to the documents attached to the state court collection complaints.

**3. TSI, and the Collection Law Firms, do not have a Principal/Agent Relationship, and Knowledge of a Dispute Cannot be Imputed from the Collection Law Firms to TSI.**

Despite plaintiffs' representations otherwise, TSI is not a principal to the collection law firms, and their reliance upon *Janetos v. Fulton Friedman & Gullace*, 2016 WL 1382174 (7th Cir. Apr. 7, 2016) is misplaced. In *Janetos*, the 7th Circuit examined whether a debt buyer could

7

be *vicariously liable* for the actions of others acting on its behalf where a debt collector sent a letter on behalf of a debt buyer. The 7th Circuit held that the debt buyer could to the extent that they were also debt collectors under the FDCPA. An independent contractor can expose another to liability under a theory of vicarious liability to the extent that the contractor was acting with actual or apparent authority or to the extent that its actions are ratified. This truism, however, does not mean that the relationship between TSI and the collection law firms is a principal/agent relationship, that TSI can be directly liable where it has no *knowledge* of a dispute, nor that *knowledge* can be imputed between two collectors. Neither *Janetos*, nor *Randolph*, hold that a debt collector, acting as servicer of a debt, should be held accountable for *knowledge* imputed from its independent contractor who is also a debt collector under the FDCPA. TSI cannot be imputed with, or held accountable for, information given to its independent contractor.

   4. **Plaintiffs' Contention That They Should Be Released From Their Loan Obligations Based Upon The Alleged Failure To Provide Notice Pursuant To 815 ILCS 505/2S Is Not Provided For By Law And Is A Further Attempt By Plaintiffs To Urge This Court To Create Law Where It Not Provided For By State Or Federal Law.**

Plaintiffs continued reliance on *Montrail* borders on frivolous, as the case was completely distinguished in defendants' reply brief, and it is neither persuasive nor precedential authority for this Court. As stated in the defendants' reply brief, in *Montrail*, the court released the sureties, because the court found that the obligee failed to provide notice expressly required by contract, which served to release the sureties. The defendants do not argue that notice in contract is given more deference than notice in statute, rather, defendants contend that there is no Illinois law or statute that supports plaintiffs' position with regard to a release or discharge, and the *Montrail* court's holding does nothing to support plaintiffs' argument because the court was interpreting the terms of a written contract voluntarily agreed to by both parties. Also, plaintiffs' reliance upon *Watkins Products Inc. v. Walter*, 11 Ill.App.3d 417 (5th Dist. 1973), is distinguishable, as it

8

dealt with a party who failed or refused to purchase a corporate surety bond, as required by the original agreement, which served to release the surety. Even assuming a party fails to give § 2S notice, the consumer is not released from their obligations under the debt, as the plaintiffs risk has not been increased, nor have they been deprived of the opportunity to protect themselves. Had the legislature wanted to release co-signers to student loans from their obligations, they would have provided such relief in the Act.

### 5. The Plaintiffs Have Failed to Plead Concrete Injury as to Each Plaintiff.

In *Robins v. Spokeo, Inc.*, the district court found plaintiff's allegations insufficient to satisfy the injury in fact requirement for constitutional standing and dismissed the complaint *pursuant to Fed. R. Civ. P. 12(b)(6).* 2011 WL 597867, *2 (C.D. Cal. 2011). The Ninth Circuit reversed, holding that plaintiff did adequately allege injury in fact because "the interests protected by the statutory rights at issue are sufficiently concrete and particularized that Congress can elevate them." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 1892 (2015). The Supreme Court reversed. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (May 16, 2016). The Court noted the Ninth Circuit's analysis was incomplete because "the injury-in-fact requirement requires a plaintiff to allege an injury that is *both* 'concrete and particularized.'" *Id.* at *3 (quoting *Friends of the Earth*, 528 U.S. at 180–81 (emphasis added)). The Court noted that a plaintiff must allege facts demonstrating each element to show a case or controversy exists. *Id.* at *5.

For an injury to be concrete, the injury must be "de facto"; that is, it must actually exist, be real and not abstract. *Id*. at *7. A concrete injury may be either tangible or intangible, and assessing whether an intangible injury amounts to an injury in fact, "both history and the judgment of Congress play important roles." *Id*. As to history, "it is instructive to consider

9

whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* As to Congress' input, while Congress can enact "a statute [that] grants a person a statutory right and purports to authorize that person to sue to vindicate that right," this is not, in and of itself, automatically enough to satisfy the concreteness requirement. *Id.* "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before….[However], Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Thus, the allegation of a bare violation of a statute and the grant of a private right of action alone, divorced from any concrete or particularized individual harm, does not satisfy the injury-in-fact requirement of Article III. This aspect of injury-in-fact analysis looks at whether the claimed injury actually occurred, or if not, whether the claimed injury is likely to be felt imminently, as opposed to a remote possibility or merely hypothetical that an injury may take place in the future. *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012); *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("we have repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient.") (*quoting Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

As to the second element, "proximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits. Put differently, the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390. The last requirement is redressability, which requires a plaintiff to show that "it [is]

10

'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Hassan v. City of New York*, 804 F.3d 277, 293 (3d Cir. 2015) (*quoting Lujan*, 504 U.S. at 560).

Here, plaintiffs' purported allegations regarding concrete injuries sustained by each and every plaintiff do not exist in plaintiffs' Consolidated Complaint. Like in much of the sur-reply, plaintiffs argue this Court should infer these allegations and allow them to improperly amend their Consolidated Complaint via their brief. This Court should decline. No inferences should be made where no allegations exist. It is telling that the entire second half of plaintiffs' sur-reply *fails to cite to any complaint paragraphs.*

As to the claims predicated upon allegations of usurious interest and collection of amounts time-barred, plaintiffs' claims fail as a matter of law, as suggested in the motion to dismiss; however, additionally, plaintiffs fail to plead any causal connection between their alleged harm and the defendants conduct, or lack thereof.

As reflected in relation to the 8a-1, credit reporting, and co-signer claims, plaintiffs' claims too fail as a matter of law; however, in addition, plaintiffs fail to allege a concrete injury, as no private right of action for damages exists with regard to 8a-1. Moreover, plaintiffs have not plausibly pled how they were possibly injured by the alleged failure to comply with 8a-1 or Section 2S. At most, plaintiffs' allegations reference hypothetical situations that do not contemplate actual concrete damages.

Finally, as addressed in the reply brief, with regard to the name of creditor claims, plaintiff O'Neill concedes that she has not been actually damaged in any way, as she asserts that she is only seeking statutory damages pursuant to *Winiecki v. Creditors Interchange Receivable Mgmt.*, 14 F.Supp. 3d 1086, 1094 (N.D. Ill. 2014). Moreover, plaintiff O'Neill reference cases

discussing whether an agent can be held personally liable for not disclosing its principal based upon theories of agency in relation to contractual performance; however, those cases have nothing to do with whether plaintiff O'Neill has suffered concrete harm. Ultimately, plaintiff O'Neill has alleged no actions under which the defendants would be liable, so it is unclear why the referenced cases serve any benefit to their analysis. Plaintiffs again attempt to stretch cases well beyond what they actually hold in a matter only meant to mislead this Court.

As there are no allegations in the pleadings that reflect any concrete harm or injury, there is no present indication of any injury having already occurred or that is likely to be felt imminently. At most, plaintiffs allege mere hypothetical injuries that may take place in the future. This clearly does not satisfy the actual or imminence requirement.

**6. The Cases Cited by Plaintiffs in their Motion to Submit Additional Authority are Distinguishable from the Factual, and Legal Issues, before this Court.**

Plaintiffs' cite *Consumer Financial Protection Bureau v. CashCall*, *Inc.*, *et al.*, 15cv7522-JFW-RAO (C.D. Cal. Aug. 31, 2016) in an attempt to argue that this Court should look beyond the documents attached to the state court collection complaints and, instead, accept plaintiffs' unsupported allegations as fact. While the factual, and procedural, underpinnings of the *CashCall* case are overly complicated for the purposes of this response brief, it is critical to distinguish plaintiffs' reliance because it is entirely unrelated to the facts before this Court. There, the CFPB filed suit against CashCall, Inc., J. Paul Reddam, WS Funding, LLC, and Delbert Services Corp. alleging violations of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. 5536(a)(1)(B), by demanding payment and collecting payment on loans that state licensing laws had rendered void or uncollectable. *Id.* at pg. 5. Specifically, the CFPB alleged that the defendants engaged in unfair, deceptive, and abusive acts and practices ("UDAAP") in violation of the CFPA. *Id.* The defendants initially answered the first amended

12

complaint, and then moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(c). On their motion, the Court noted that the CFPB's allegations "that Defendants' conduct (taking and demanding payment from consumers for amounts that they do not actually owe) satisfies the required elements for each UDAAP violation (unfairness, deception, and abusiveness)", that "the proper question in the context of a CFPA claim is whether the plaintiff has alleged an action that falls within the broad range of conduct prohibited by the CFPA," and that the CFPB had pled a CFPA claim. *See* Dkt. 110. As such, after finding the CFPB had pled a CFPA claim, and on summary judgment, the *CashCall* Court looked at the substance of the transactions to determine which law to apply (choice-of-law provisions in loan agreements or borrowers' home states), which is where the court relied upon *Ubaldi* in one short sentence without any further analysis. Whether intentional, or not, plaintiffs' fail to indicate that the *CashCall* Court's analysis had absolutely nothing to do with preemption under the NBA, the FDCPA, or whether this Court should ignore the written contracts attached to the state court collection complaints where they expressly provide the loans were originated by national banks and were not usurious at the time the loans were made. There, the CFPB pled a claim under the CFPA for a violation of the UDAAP, and on summary judgment the court looked beyond the documents to determine which law to apply. The facts before this Court are entirely distinguishable.

As with *CashCall*, the plaintiffs fail to appropriately provide any context for the 7th Circuit's decision in *Marquez*. There, the district court found that language in a state court collection complaint was not misleading or deceptive as a matter of law, and granted the defendants motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). 2016 WL 4651403, at *1. On appeal, the 7th Circuit, addressed an argument raised by the defendants that

15 U.S.C. § 1692e does not regulate the content of state court pleadings. *Id.* at *2. The 7th Circuit simply held that Section 1692e applies to false statements in "formal legal pleadings". *Id.* at *3. The 7th Circuit did not hold that Illinois' state (and its county) courts' laws, rules and regulations concerning the manner in which collection litigation is handled and/or its litigation processes are regulated by Section 1692e. Had the 7th Circuit intended such a broad ruling, it would have overruled its decision entered on May 19, 2016 in *St. John v. Cach, LLC*, 822 F.3d 388 (7th Cir. 2016), and in *Beler v. Blatt, Hasenmiller, Leibsker & Moore,* LLC, 480 F.3d 470, 473 (7th Cir. 2007) where the court held that the litigation process is not regulated by the FDCPA. It would have also overruled its decision in *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285 (7th Cir. 2005). It did not. Instead, it limited its holding in *Marquez* to false statements in *pleadings* filed in state court. Plaintiffs over read the 7th Circuit's holding in *Marquez.* Here, plaintiffs attempt to attack long established state court usury and assignment law, long established Illinois statute of limitations law and also two obscure Illinois procedural notice rules. Plaintiffs are not specifically attacking any false statements and have wholly failed to identify any specific false statement in any of the cited pleadings and, for that reason, *Marquez* is entirely inapplicable.

WHEREFORE, defendants respectfully move this Honorable Court to grant their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss plaintiffs' complaint with prejudice, or, in the alternative, if any claims survive, to strike the irrelevant and prejudicial allegations asserted in paragraphs 76-78 with prejudice.

Respectfully submitted,

/s/ *James K. Schultz*
James K. Schultz
Daniel W. Pisani
Morgan I. Marcus
Sessions Fishman Nathan & Israel
120 South LaSalle Street, Suite 1960
Chicago, Illinois 60603-3651
Telephone:	(312) 578-0990
Facsimile:	(312) 578-0991
E-mail:	jschultz@sessions.legal
	dpisani@sessions.legal
	mmarcus@sessions.legal
*Attorneys for Transworld Systems Inc., EGS Financial Care, Inc., Blitt and Gaines, P.C. National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, and National Collegiate Student Loan Trust 2007-4*

Respectfully submitted,

/s/ *Todd P. Stelter*
David M. Schultz
Todd P. Stelter
Jason L. Santos
Hinshaw & Culbertson, LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Telephone: (312) 704-3527
Facsimile:	(312) 704-3001
E-mail:	dschultz@hinshawlaw.com
	tstelter@hinshawlaw.com
	jsantos@hinshawlaw.com
*Attorneys for Transworld Systems Inc. and Weltman Weinberg & Reis Co., L.P.A.*

**CERTIFICATE OF SERVICE**

   I certify that on September 9, 2016 a copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' SUR-REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

              */s/ James K. Schultz*
              One of the Attorneys for Defendants